**Lonnie Ray FRANKLIN,
Movant-Appellant,**

v.

**STATE of Missouri, Respondent.**

**No. 36137.**

Missouri Court of Appeals,
St. Louis District,
Division Four.

Nov. 12, 1975.

Lusser, Hughes & Lusser, Henry C. Hughes, St. Louis, for movant-appellant.

John C. Danforth, Atty. Gen., Preston Dean, Asst. Atty. Gen., Timothy J. Verhagen, Asst. Atty. Gen., Jefferson City, J. Brendan Ryan, Circuit Atty., Thomas C. Muldoon, Asst. Circuit Atty., St. Louis, for respondent.

NORWIN D. HOUSER, Special Judge.

On October 8, 1970, a jury found Lonnie Franklin guilty of murder in the first degree. His motion for new trial was overruled January 6, 1971. He did not appeal. On March 23, 1971, he filed a postconviction Rule 27.26 motion to vacate the judgment of conviction. The motion was heard, overruled, and on appeal the Supreme Court decided against appellant on two points, but

because the trial court failed to make specific findings of fact on a third issue (denial of right to appeal) the cause was remanded for findings on that issue. *Franklin v. State*, 501 S.W.2d 166 (Mo.1973). On remand the trial court made the following findings:

"1. That movant received adequate information with respect to his appeal and was fully advised concerning the same.

"2. That movant met with his retained counsel on a number of occasions with reference to appeal and then was afforded the benefit of their counsel.

"3. That movant was apprehensive about the death penalty, and the possibility of imposition upon another trial, and such subject was duly considered when movant waived his right of appeal.

"4. That there was no evidence to demonstrate indigency or destitution on behalf of movant and nothing to indicate other counsel was not available.

"5. That there was no manifestation of indigency or a desire to appeal nor were there any suggestions of such propositions.

"6. That movant knowingly, voluntarily and intelligently waived his right of appeal and had a sufficient understanding of the situation."

On this appeal from the final order of the circuit court on remand appellant makes these points:

"I

"Movant's Motion to set aside judgment and sentence under Supreme Court Rule 27.26 should be granted because the transcript does not show that Mr. William Murphy or Mr. F. Neil Aschemeyer, or anyone else, advised the movant, Lonnie Ray Franklin, that he had a right to ask the Court to appoint counsel for the purpose of making an appeal to the Supreme Court of the State of Missouri and to ask the State to pay the cost of preparing the transcript. An indigent defendant is entitled to the appointment of counsel on an appeal."

"II

"Movant's Motion should be granted because movant, Lonnie Ray Franklin, did not waive his constitutional right to appeal since that action was not taken voluntarily, knowingly and intelligently."

We refer to the recital of facts in *Franklin v. State*, supra, 501 S.W.2d l.c. 172, which need not be repeated. Additional facts are these: After verdict in the murder case appellant's retained attorney, William Murphy, informed appellant that he was willing to continue as counsel on appeal without further fee, but this was not satisfactory to appellant and his father, who then consulted Mr. Aschemeyer. The latter entered his appearance as attorney of record for appellant, a fact known to the circuit judge. Appellant's father testified that in his discussion with Mr. Aschemeyer about the possibility of a death sentence on retrial Mr. Aschemeyer told him that it was 500 to 1 that the State would ask for the death penalty. In his discussions with retained Attorney Aschemeyer appellant was advised that under the law if he were retried and again found guilty "the punishment for Murder in the First Degree is the gas chamber." Nothing of record indicates that during the trial or between the date the verdict was returned and the final date for filing notice of appeal the circuit judge was informed that appellant was indigent (if he was) or that appellant desired to appeal. Appellant had testified at the murder trial that he was an upholsterer. Mr. Aschemeyer did not recall whether he told appellant or his relatives that appellant had a right to court-appointed counsel on appeal, but he did remember that neither appellant nor his relatives asked him about it. Appellant testified that Mr. Aschemeyer did not inform him that he could have a court-appointed attorney on appeal.

On January 11, 1971, five days before the last day for filing a notice of appeal, and following discussions between appellant, appellant's father and Mr. Aschemeyer relating to appeal and the possibility of the death sentence on retrial, the following writing, signed by appellant, was filed in the murder case: "I hereby direct my attorney, F. Neil Aschemeyer, not to appeal the above-captioned case in which I was sentenced to life imprisonment, and I further direct him to withdraw as my attorney in such case." Also filed that date was a writing signed by Mr. Aschemeyer, directed to appellant, reciting the filing with the circuit judge of the direction not to appeal and to withdraw as counsel and the entry of an order permitting his withdrawal, and telling appellant that if he decided to appeal it was necessary to file a notice of appeal not later than January 16, 1971. Following Mr. Aschemeyer's advice with respect to the possibility of the death sentence on retrial and appellant's signing of the appeal waiver, and after Mr. Aschemeyer withdrew as counsel and returned $2000 to appellant's father, neither the latter nor appellant made any further effort to employ a third lawyer for the purposes of appeal.

Our review is limited to a determination whether the findings, conclusions and judgment of the circuit court are clearly erroneous. Rule 27.26(j). The burden of proof is upon appellant. *Crews v. State*, 510 S.W.2d 425 (Mo.1974), and cases cited l.c. 430[2].

Taking for granted that he was indigent when sentenced and at the time the critical decisions with respect to appeal had to be made, appellant advances the contention that he had a constitutional right to advice from his employed counsel, Mr. Murphy or Mr. Aschemeyer, or from someone (unspecified, but apparently referring to the State, the judge, or the circuit attorney)—advice to the effect that he had a right to ask the court to appoint counsel for appeal and for the State to pay the cost of the transcript.

Appellant maintains that he did not waive his right to appeal because, due to the failure to inform him as above indicated, his action directing his counsel not to appeal was not taken voluntarily, knowingly and intelligently.

These contentions are disallowed for several reasons. In the first place, as in *Burnside v. State*, 473 S.W.2d 697 (Mo.1971), there is no basis for the assumption by appellant that he was indigent at these critical stages of the litigation, or that the trial court knew of his indigency. The transcript of the murder trial does not show his indigency. He was represented by paid counsel, to the knowledge of the court, first by Mr. Murphy and next by Mr. Aschemeyer, and not by court-appointed counsel. From appellant's testimony that he was an upholsterer the judge could reasonably have concluded that he was gainfully employed and self-supporting. According to the record appellant's father was "worried to death" about his son and was willing to assist him financially. He paid Mr. Murphy's fee. He advanced $3000 to Mr. Aschemeyer. He was a machinist with a good income so that, with appellant's earnings if released on bond, the two could have paid a substantial monthly amount toward an attorney's fee. After Mr. Aschemeyer's withdrawal as counsel for appellant the father still had $2000 with which it might have been possible to employ counsel on appeal, or at least enough to make a down payment on a fee. Considering all of these facts the trial court's Findings Nos. 4 and 5 are not clearly erroneous.

Without support for appellant's basic premise of indigency we are not required to determine the question whether appellant as an indigent was unconstitutionally deprived of his right to advice with respect to his rights of appeal. *Burnside v. State*, supra, 473 S.W.2d l.c. 700[2]. Assuming, however, that appellant could have qualified as a poor person, we will address the question whether a defendant represented

by counsel, following conviction, has a constitutional right to be informed of his right to appeal with the assistance of appointed counsel and his right to a free transcript. Was there a duty on the circuit judge to take affirmative steps to inquire of appellant with respect to his financial status and his desire to appeal, and offer to appoint counsel on appeal and make other orders customarily made for the benefit of indigents?

*Douglas v. California*, 372 U.S. 353, 83 S.Ct. 814, 9 L.Ed.2d 811 (1963), holds that an indigent defendant has the right to counsel on appeal. *United States ex rel. Smith v. McMann*, 417 F.2d 648 (2d Cir. 1969), holds that a state has a duty to warn every indigent person convicted of crime of his right to appeal and his right to prosecute his appeal without expense to him by counsel appointed by the state. The Sixth Circuit has followed this rule. *Goodwin v. Cardwell*, 432 F.2d 521 (6th Cir. 1970).

The opposite view, however, has been taken in the Third and Fifth Circuits, that "when a defendant has *retained* counsel of his own choosing the State cannot be held to have violated the constitutional right of an indigent to counsel on appeal, unless the need for appellate counsel is brought home to the State, either by the defendant's request for appellate counsel or because a responsible State official has actual knowledge that the defendant is indigent and desires to appeal his conviction." (Our emphasis.) *Pate v. Holman*, 341 F.2d 764, 773 (5th Cir. 1965), mod. 343 F.2d 546 (5th Cir. 1965). See also *Beto v. Martin*, 396 F.2d 432, 434 (5th Cir. 1968); *United States ex rel. O'Brien v. Maroney*, 423 F.2d 865, 869[6] (3d Cir. 1970); *Gregory v. United States*, 446 F.2d 498 (5th Cir. 1971); *Copeland v. Beto*, 471 F.2d 710 (5th Cir. 1973); *United States ex rel. Payton v. Rundle*, 472 F.2d 36 (3d Cir. 1972); *Turnbow v. Beto*, 477 F.2d 1151 (5th Cir. 1973).

■ We follow the Third and Fifth Circuits holding that to be entitled to postconviction relief it is not enough for a petitioner to show that indigency occasioned his inability to employ counsel or to appeal; that he must show State action depriving him of his Fourteenth Amendment rights; that State action is shown when a responsible official in the State's system of justice rejects a request for counsel or fails to take proper steps toward appointment of counsel for a convicted defendant *when he has knowledge of the defendant's indigency and desire for appellate counsel.*

■ It would be obnoxious to find a deprivation of constitutional rights in this case, where there is no showing that appellant was indigent or that the trial judge knew or had been informed of appellant's indigency, and where, after consultation with retained counsel, appellant filed with the court a written direction to his counsel not to appeal the case.

■ Nor did appellant have a constitutional right to be informed *by his retained counsel* of the right of an indigent to court-appointed counsel on appeal and a free transcript. "When there is a representation by privately retained, non-appointed counsel, the mandate of the sixth amendment is implemented not by action of the state, but by action of the individual defendant. The state is not involved in the process of selecting counsel, for the defendant himself achieves the precise objective set forth in the cases proclaiming that an indigent is entitled to have the state furnish that which he cannot afford: counsel to represent him. Accordingly, equal protection considerations are not apposite. After an appearance has been entered by private counsel, the state is normally absolved of any responsibility to concern itself in a supervisory fashion with the problems of representation. The very nature of the private attorney-client relationship, brought into existence by the deliberate choice of the defendant, justifies an assumption that the defendant will be the recipient of professional advice. So long as the defendant is,

in fact, represented by private counsel at the critical appeal stage, the state generally has no duty—indeed, no authority—to interfere with the attorney-client relationship." *United States ex rel. O'Brien v. Maroney,* supra, 423 F.2d l.c. 869.

■ Franklin had the benefit of the advice of two competent retained attorneys with respect to his right to appeal and of the necessity and required time within which a notice of appeal had to be filed. "When an accused person retains counsel on the original trial, the State may rely on the presumption that the accused's lawyer will protect his client's rights on appeal." *Pate v. Holman,* supra, 341 F.2d l.c. 775. That presumption has not been rebutted as a matter of law. After consulting with counsel appellant signed a written waiver of his right to appeal. Whether he signed the waiver because he could not satisfy Mr. Aschemeyer's financial requirements and in ignorance of his right to appeal as a poor person, or because of Mr. Aschemeyer's advice that after a successful appeal and on retrial there was a possibility of conviction and infliction of the death sentence, was a matter peculiarly for the determination of the trial court. *Newland v. State,* 454 S.W.2d 21, 23 (Mo.1970).

■ There was ample testimonial basis for the trial court's Findings Nos. 1 and 2, and for Finding No. 3 that appellant's apprehension about possible infliction of the death penalty on retrial was a consideration in appellant's decision to waive his right of appeal.

This case is comparable to *Newland v. State,* supra; sub nom., *Newland v. Haynes,* 445 F.2d 267 (8th Cir. 1971). Following Newland's conviction of robbery his counsel requested money for the appeal but neither Newland nor his relatives could supply the necessary funds. His counsel then suggested that he sign a written waiver of his right to appeal, because there was pending an escape charge which would run concurrently with the robbery charge. Newland signed a suggested written request that counsel not file a notice of appeal of the robbery conviction. In a 27.26 proceeding Newland testified that he wanted to appeal but signed the waiver because he did not have the money necessary to take the appeal and did not know he could appeal as a poor person. The court of appeals concluded that the findings of the district court that Newland's waiver of his right to appeal was voluntarily, knowingly and intelligently made were not clearly erroneous, in view of the written waiver signed by Newland and his retained attorney's testimony that Newland advised him and advised the trial court that he did not wish to appeal.

Considering all of the testimony the findings and conclusions of the circuit court, including the finding that appellant knowingly, voluntarily and intelligently waived his right of appeal, are not clearly erroneous, but have substantial support of record.

Judgment affirmed.

SMITH, C. J., and STOCKARD, Special Judge, concur.